PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  1:19CR0489-1 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| GARY FRANTZ, *et al.*, | ) | **AND ORDER** |
| | ) | [Resolving ECF Nos. 133, 134, 135, 136, |
| Defendants. | ) | and 141] |

Pending are:

Defendant's Motion *in Limine* to Exclude the Mention of the Term "Candyman" With Reference to Dr. Gary Frantz (ECF No. 133);

Defendant's Motion *in Limine* to Preclude Evidence or Argument Regarding the Pending Civil and Criminal Litigation of Dr. Gregory J. Gerber and/or Mention of Additional Physicians Subject to Criminal Prosecution or Conviction (ECF No. 134);

Defendant's Motion *in Limine* to Limit the Testimony of Agent Tyler Parkinson and any Other Non-Expert Witnesses (ECF No. 135);

Defendant's Motion *in Limine* to Preclude Evidence or Argument Regarding the Death of L.T. or, in the Alternative, to Preclude Evidence or Argument That the Medications Prescribed by Defendant Were the Cause of L.T.'s Death (ECF No. 136); and,

The Government's Motion *in Limine* (ECF No. 141).

### I.  ECF No. 133

Defendant moves the Court to limit the testimony of Diversion Investigator Scott Brinks, or any witness, from referring to Defendant as the "candyman."  He argues any such testimony is unreliable, irrelevant, prejudicial, hearsay, and inadmissible under Fed. R. Evid. 402, 403, and 801.

(1:19CR0489-1)

The Government opposes this motion.  During the course of the investigation of Defendant, DEA investigators spoke with pharmacists who had filled some of the prescriptions. During those interviews, some of these pharmacists, as well as other witnesses, described Defendant as writing prescriptions for large quantities of pain medications.  At least one of those pharmacists referred to Defendant as the "candyman," a term referencing the large amount of prescriptions for pills that Dr. Frantz would write.  The Government intends on calling at least one witness who has referred to Defendant as the "candyman."  Accordingly, if offered through this witness, such relevant and admissible testimony would not be hearsay and Defendant would be free to challenge this description because this witness would be subject to cross-examination.

Defendant argues that this term should be excluded because it "has the potential to be highly prejudicial and misleading to the jury if mentioned and misinterpreted."  ECF No. 133 at PageID #: 793.  However, that is not the standard for excluding relevant evidence.  Rather, relevant evidence such as this should be excluded only if the danger of unfair prejudice or misleading the jury substantially outweighs its probative value.  *See* Fed. R. Evid. 403. Moreover, such a term would not be misleading when it would be offered through a witness who would be subject to cross-examination.  The motion is denied.

## II.  ECF No. 134

Next, Defendant moves the Court to issue an order *in limine* precluding the Government from offering evidence or argument at trial regarding the pending civil and/or criminal litigation filed by the Government against Dr. Gregory J. Gerber as well as the mention of any investigation or conviction of Dr. Martinez and Dr. Iskander as they relate to the practice of medicine by Dr. Gary Frantz.

(1:19CR0489-1)

The Government does not oppose this motion regarding evidence of separate criminal prosecutions of other practitioners, but requests to admit such evidence in limited circumstances. Although Drs. Gerber, Martin, and Iskander may be referred to in testimony as having received referrals from Defendant, the Government does not intend on introducing evidence or making any arguments regarding the civil and/or criminal proceedings against them. However, to the extent that Defendant opens the door to such evidence by implying that the practices of Drs. Gerber, Martin, and Iskander were highly respected such that referrals to these specific practices alone carry the weight of legitimacy, the Government would ask the Court for permission to present such evidence in rebuttal of such an argument. *See* ECF No. 144 at PageID #: 1074. Accordingly, the motion is granted in part.

### III. ECF No. 135

Defendant also moves the Court to limit the testimony of the lead investigator, Drug Enforcement Agent Tyler Parkison, as well as any other non-expert witnesses, from opining as to best practices and/or whether Dr. Frantz's medical treatments were performed "outside the usual course of practice and not for a legitimate medical purpose." He argues any such testimony is unreliable, irrelevant, prejudicial, and inadmissible under Fed. R. Evid. 702, 701, 401, 402, and 403.

The Government does not oppose this motion regarding the testimony of Special Agent Parkison, but requests to admit such evidence in limited circumstances. Testimony from Special Agent Parkison about why the investigation of Defendant continued and why certain investigative techniques were used culminating in his obtaining and executing a search warrant for patient files from the office of Dr. Frantz will complete the story of the investigation for the

(1:19CR0489-1)

jury.  The motion is granted in part.

### IV.  ECF No. 136

Finally, Defendant moves the Court to issue an order *in limine* precluding the

Government from offering evidence or argument at trial noting the death of one of Dr. Frantz's

patients with the initials L.T. or, in the alternative, suggesting that the medications Dr. Frantz

prescribed L.T. were the cause of her death.  L.T. is the only person whose death occurred during

the time period in the Indictment (ECF No. 1) that was a patient treating with Defendant.

The Government opposes this motion.  According to the Government:

> Here, L.T.'s death is relevant because it explains why Frantz stopped prescribing
> to L.T.  The other nine patients who are named in the indictment received
> prescriptions alleged in the indictment between Summer 2014 and May 2015.  In
> contrast, the indictment alleges only two prescriptions that Frantz wrote to L.T.
> on August 26, 2014.  Evidence that L.T. died explains why Frantz stopped writing
> prescriptions to L.T.  Likewise, it prevents the jury from incorrectly assuming that
> Frantz stopped prescribing to L.T. because he knew she was abusing prescriptions
> or because he believed additional prescriptions would have been improper.

ECF No. 144 at PageID #: 1076.  The Government "does not intend to elicit such evidence in a

vacuum.  Rather, the United States would clarify through any witness, such as Dr. Landers, that

there were other contributing factors leading to L.T.'s death."  ECF No. 144 at PageID #: 1078.

Unlike the defendant in *United States v. Bourlier*, 518 Fed.Appx. 848 (11th Cir. 2013),

Defendant has not been charged with causing the death of  L.T.  She suffered from significant

heart disease that may have contributed to her death.  Evidence shows that the autopsy of L.T.

found "severe enlargement of the heart with significant atherosclerotic cardiovascular disease"

and neither coroner was able to conclude that the lethal range of methadone was the only cause

of L.T's death.  *See* Autopsy Report, Forensic Toxicology Report, and Coroner's Report (ECF

No. 136-1).

4

(1:19CR0489-1)

Defendant contends that all of the parties' evidentiary concerns could be addressed in a stipulation to the effect of: "The parties agree that L.T. passed away on August 28, 2014." ECF No. 145 at PageID #: 1083. But, the Court has not been advised that the parties have entered into a stipulation about the evidence regarding the death of L.T. Absent a stipulation, the Court will permit the Government to offer evidence or argument at trial noting the death of L.T. and the cause of her death. *See United States v. Schwartz*, 702 Fed.Appx. 748, 756 (10th Cir. 2017) (affirming the admission of evidence of uncharged patient deaths). Accordingly, the motion is denied.

## V. ECF No. 141

The Government moves the Court to issue an order *in limine* to exclude certain expert testimony, as well as certain evidence it believes Defendant intends on introducing at trial. Defendant has given the Government notice of his intent to introduce the expert testimony of Drs. Carol Warfield and Daniel Buffington. *See* Defendant's Rule 16(b)(1)(C) Notice of Intent to Use Expert Testimony at Trial (ECF No. 142-1). Defendant has also provided documents to the Government that indicate Dr. Frantz intends to introduce evidence that is outside the scope of the charges alleged in the Indictment (ECF No. 1), including evidence of patients who are not referenced in the Indictment (ECF No. 1), evidence of his good acts, and evidence regarding a Medical Board investigation that concluded before the charges alleged in the Indictment (ECF No. 1). The Indictment (ECF No. 1), however, charges Defendant with substantive illegal distribution offenses relating to controlled substance prescriptions issued outside the usual course of professional practice in violation of 21 U.S.C. § 841, but it does not allege that Dr. Frantz illegally distributed controlled substances every single time he saw a patient.

(1:19CR0489-1)

### A.  Expert Disclosure Obligations Under Fed. R. Crim. P. 16(b)(1)(C)

Defendant's Rule 16(b)(1)(C) Notice of Intent to Use Expert Testimony at Trial (ECF No. 142-1) states that Dr. Frantz intends to present the expert testimony of Drs. Carol Warfield (pain management) and Daniel Buffington (clinical pharmacology and toxicology).  The Government argues that Defendant's expert disclosures are deficient under Fed. R. Crim. P. 16(b)(1)(C). Specifically, the United States asserts that:  "Defendant's notice does not include an expert report from either proposed witness, nor does Defendant's notice provide specific opinions as to individual patients or individual prescriptions that Defendant Frantz wrote to these patients." ECF No. 141 at PageID #: 852.  The Government requests that the Court "limit each expert's testimony to the generalized nature outlined in Defendant's notice" because of the inadequate "generalized summations" contained therein.  ECF No. 141 at PageID #: 860.  Defendant responds that his Notice (ECF No. 142-1) complies with the minimal notice requirements under Rule 16(b)(1)(C) regarding expert witness summaries.

Fed. R. Crim. P. 16(b)(1)(C) provides, in relevant part, as follows:

> The defendant must, at the government's request, give to the government *a written summary of any testimony* that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
> **(i)**  the defendant requests disclosure under subdivision (a)(1)(G) and the government complies;
>
> \*   \*   \*
>
> *This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.*

(emphasis added).  As the Advisory Committee Notes for Rule 16 explain, disclosure is required under this Rule "to minimize surprise that often results from unexpected expert testimony . . . and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through

(1:19CR0489-1)

focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note (1993). *See also*

*United States v. White*, 492 F.3d 380, 406 (6th Cir. 2007).

The Sixth Circuit has held that, to satisfy Rule 16, it is not sufficient for an expert

summary to simply list general subject matters about which the expert intends to testify, but fail

to "identify what opinion the expert would offer on those subjects." *White*, 492 F.3d at 407. *See*

*United States v. Anderson-Bagshaw*, 509 Fed.Appx. 396, 410 (6th Cir. 2012) (finding expert

summary deficient because it failed to adequately identify the opinions held by the expert); *see*

*also United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of

the expected testimony, not a list of topics.  The . . . notice provided a list of the general subject

matters to be covered, but did not identify what opinion the expert would offer on those

subjects.").  Additionally, the Sixth Circuit has affirmed the exclusion of expert testimony when

the expert summary provided an "extremely vague" description of the bases of the opinion. *See,*

*e.g.*, *Anderson-Bagshaw*, 509 Fed.Appx. at 411 (affirming exclusion of expert testimony where

defendant's expert "listed not a single test that Dr. McPherson performed, much less the specific

conclusions reached from each test.  Not until trial did the government learn which tests Dr.

McPherson had performed.  Without at least a list of the tests, the government could not have

adequately prepared to cross examine her."); *see also United States v. Davis*, 514 F.3d 596, 613

(6th Cir. 2008) (finding that expert summary failed to adequately indicate bases of opinion

because "if Davis had hired a chemist, he or she would not have been able to analyze the steps

that led the government's chemists to their conclusions.").

The court may order a defendant to supplement his disclosures under Fed. R. Crim. P.

16(b)(1)(C).  *See United States v. Valle*, No. 12 Cr. 847(PGG), 2013 WL 440687, at *6 (S.D.N.Y.

7

(1:19CR0489-1)

Feb. 2, 2013) (defendant ordered to provide the supplemental disclosure two days after the

memorandum opinion & order was entered on the docket).

      With the above principles in mind, the Court now examines the parties' arguments with

respect to each of Defendant's expert summaries.

### 1. Dr. Carol Warfield

      According to the Government, Defendant's Notice (ECF No. 142-1) does not include any

specific opinion from Dr. Warfield regarding the facts of the case at bar other than the following

general, broad opinions:  "Dr. Warfield will testify that she saw no evidence that Dr. Frantz was

practicing outside the usual course of professional practice.  She will testify that the care and

treatment provided to each of the ten patients identified in the Indictment was for a legitimate

medical purpose."  ECF No. 142-1 at PageID#: 880.  Later, after listing several categories of

generic information that Defendant submits Dr. Warfield will discuss in her testimony,

Defendant's Notice states:  "[Dr. Warfield] will testify that she did not see any evidence

whatsoever that Dr. Frantz's practice was not within the usual course of medical practice as the

Government's expert opined.  In addition, Dr. Warfield will testify that she believes that the

opioids that were prescribed were prescribed for a legitimate medical purpose, that is, intractable

pain which is the most common indication for the legitimate prescription of opioids and each of

these patients had retractable pain."  ECF No. 142-1 at PageID#: 887.  The Notice (ECF No. 142-

1) does not include any opinions from Dr. Warfield as to specific patients of Defendant.

### 2. Dr. Daniel Buffington

      The Government points out that Defendant's Notice does not state that Dr. Buffington has

reviewed any material specific to Dr. Frantz, the charges in the Indictment (ECF No. 1) or the ten

8

(1:19CR0489-1)

patients identified therein.  *See* ECF No. 142-1 at PageID #: 887-94.[1]  The Government argues the

following eight opinions Dr. Buffington will offer regard general statements about pain

management, an area in which Defendant's Notice (ECF No. 142-1) does not support that Dr.

Buffington is qualified to testify as an expert:

- "Dr. Buffington will opine that the clinical management of pain, both acute and chronic, and the implementation of [illegible] the treatment of pain syndromes is as much of an art as it is a science in that [it] is continually evolving as new drug therapies emerge and the body of scientific literature addressing the safety and efficacy of these medications grows."  ECF No. 142-1 at PageID #: 889.

- "Dr. Buffington will opine that the prescribing of opioids for pain management was the standard of care during this time [the 1990s], implemented in medical guidelines for best practice, and that the adequate treatment of pain became part of the strict quality metrics utilized to grade healthcare facilities and determine federal funding.  Additionally, Dr. Buffington will opine that regulatory restrictions and scrutiny over opioid prescribing were lessened in an effort to reduce barriers to adequate pain management."  ECF No. 142-1 at PageID #: 890.

- "Dr. Buffington will opine that over the more recent years, the healthcare community has seen exponential growth in the availability of published research concerning the addictive potential and significant risk of harm and/or overdose associated with opioids, development of clinical practice guidelines from both professional associations and public health agencies, and a heightened regulatory and law enforcement involvement in the monitoring of prescriptions surrounding opioids and related drugs."  ECF No. 142-1 at PageID #: 890.

- "[Dr. Buffington] will opine that barriers [to implementation of the new opioid recommendations] can include but are not limited to patient tolerance to changes in therapy, access to resources, navigating the limitations or restrictions on product selection set by health insurers, and coordination of care with a patient's [healthcare team]."  ECF No. 142-1 at PageID #: 891.

---

[1]  Defendant asserts the Government is correct that Defendant's Notice (ECF No. 142-1) fails to state the specific materials that Dr. Buffington reviewed with reference to Dr. Frantz.  Defense counsel acknowledges this omission by mistake and offers that Drs. Warfield and Buffington each reviewed identical materials provided to Defendant by the Government in their preparation for this case.  *See* ECF No. 148 at PageID #: 1092 n. 1.

(1:19CR0489-1)

- "Dr. Buffington will opine that current practice guideline recommendations[2] are educational in nature and intended to inform prescribers on indications for opioid therapy, generalized dosing regimens (non-patient specific), potential durations of therapy, monitoring criteria for usual adverse effects and treatment compliance, among other factors."  ECF No. 142-1 at PageID #: 891.

- "Dr. Buffington will opine that the Ohio [Automated Rx] Reporting System (OARRS) reports are limited to structured transactional data . . . That the review of OARRS, for the purposes of criminal indictment, does not provide contextual data such as diagnosis, clinical rationale for prescribing, patient instructions or education provided, non-controlled analgesic prescriptions, prior failed therapies, pain level, comorbidities, or the prescriber's assessment of the patient."  ECF No. 142-1 at PageID #: 892.

- "Dr. Buffington will opine that pain management is a subjective process, and drug selection, dose titration of opioids, and concomitant therapy with benzodiazepines is based on individual, patient-specific factors, therapeutic goals, and the prescriber's clinical judgement."  ECF No. 142-1 at PageID #: 893.

- "Dr. Buffington will also opine that it is crucial to understand that the purpose of clinical practice guidelines[3] is to define and provide educational guidance on medical treatment strategies, not to define a required threshold for standard of care."  ECF No. 142-1 at PageID #: 893.

Defendant's Notice (ECF No. 142-1) also summarizes that Dr. Buffington will offer

his opinion as to the following matters, which Dr. Frantz provides in the following summary-list

fashion:

- The differing views and prescribing of opioids from the [1990s] to today;

- The use and application of practice guidelines;

- The evolving science on the use, efficacy, and risk of opioids;

---

[2]  The Government contends it has no information as to what this opinion regards because Defendant's Notice (ECF No. 142-1) does not specify which practice guideline recommendations.

[3]  The Government notes again that Defendant's Notice (ECF No. 142-1) does not specify which clinical practice guidelines.

10

(1:19CR0489-1)

- The role of patient specific clinical facts and physician judgment in prescribing opioids;

- The differing views of health care professionals in the prescribing, risk, and efficacy of opioids; and,

- The evolving efforts to close down "pill mills" and their distinction from the practice of Dr. Gary Frantz.

ECF No. 142-1 at PageID #: 893-94.

A review of Defendant's Notice (ECF No. 142-1) reveals both Drs. Warfield and Buffington's generalized summations of their testimony, the bases and reasons for those opinions, and both witness's qualifications through their *curriculum vitaes* (ECF No. 142-1 at PageID #: 895-977).  The Government describes a portion of Dr. Buffington's purported testimony as a simple summary-list, yet acknowledges eight specific opinions offered by Dr. Buffington within the Notice.  Similarly, the disclosures surrounding Dr. Warfield's testimony enumerate her opinions and the bases for those opinions.  However, Defendant's Notice (ECF No. 142-1) does not include the actual opinions of Drs. Warfield and Buffington as to the ten patients identified in the Indictment (ECF No. 1) or individual prescriptions that Defendant wrote to these patients, and the reasons for their opinions.

In *United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015), the Sixth Circuit held that the following jury instructions were ample and accurate conveying the meaning of "legitimate medical purpose":  "[i]n considering whether the defendant acted with a legitimate medical purpose in the course of usual professional practice, *you should consider all of the defendant's actions and the circumstances surrounding them*." *Id.* at 387 (emphasis in original).  To exclude or limit the testimony of Dr. Buffington to the specific period in time for which Defendant is

11

(1:19CR0489-1)

charged in the Indictment (ECF No. 1) would be to prohibit the jury from considering "all of the defendant's actions and the circumstances surrounding them" as *Volkman* allows.

The investigation that led to the Indictment (ECF No. 1) began in 2013 with a thorough review of the OARRS.  Although, the Government's expert, Dr. Milton Landers, also reviewed the OARRS, the Government argues that Dr. Buffington's proposed testimony regarding the OARRS is "irrelevant because the indictment in this case was not based on OARRS data."  *See* ECF No. 141 at PageID #: 863.

**B.  Defendant's Additional Evidentiary Disclosures**

**1.  Part of Defendant's Exhibit 405**

Two pages of Exhibit 405 are correspondence from the State Medical Board of Ohio, dated June 15, 2005 and August 1, 2005.  Defendant has withdrawn the two pages.  The parties agree these letters predate the charges alleged in the Indictment (ECF No. 1) and they will not be offered at trial.  *See* ECF No. 141 at PageID #: 856; ECF No. 148 at PageID #: 1097.

**2.  Defendant's Exhibit 700**

Defendant's Exhibit 700 is the patient file for a person with the initials D.T., who is not named in the Indictment (ECF No. 1).  The file appears to consist of records from 1994.  According to Defendant, the medical records of D.T. contain background information that will be introduced by Dr. Frantz in the event Defendant is called to testify.  Defendant will proffer to the Court the reason for their relevancy should it be decided to introduce these documents as

(1:19CR0489-1)

evidence.  *See* ECF No. 148 at PageID #: 1098.  Therefore, the Court reserves ruling on this

prong of the Government's Motion *in Limine* (ECF No. 141).[4]

### 3. Defendant's Exhibit 112

Defendant's Exhibit 112 is a 47-page list of patients of Dr. Frantz.  The Government

argues evidence regarding patients who are not named in the Indictment (ECF No. 1) and

evidence regarding Defendant's prior good acts should be excluded.  Defendant does not intend

on offering this as evidence of specific good acts or as evidence of any patient treatment other

than the ten patients who are included in the Indictment (ECF No. 1).  Rather, Exhibit 112 would

be offered to corroborate testimony as to the nature and extent of Dr. Frantz's practice.  *See* ECF

No. 148 at PageID #: 1098.

Defendant argues that testimony about Exhibit 112 is well within the aforementioned

*Volkman* guidance considering "all of the defendant's actions and the circumstances surrounding

them" in determining whether Dr. Frantz acted with a legitimate medical purpose in the course of

usual professional practice.  797 F.3d at 387.  To exclude or limit testimony to the specific period

in time for which Defendant is charged in the Indictment (ECF No. 1) would be to prohibit the

jury from considering "all of the defendant's actions and the circumstances surrounding them."

However, reverse 404(b) evidence[5] of Defendant's treatment and prescribing to other

patients who are not named in the Indictment (ECF No. 1) may be limited or excluded by the

---

[4]  Defendant is cautioned to avoid actions that will cause undue delay.  Given that the trial is estimated to last three weeks, the Court will not pause to allow that which could have been done earlier or pretrial.

[5]  Reverse 404(b) evidence is "evidence of a prior act by another [that] is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant."  *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004).

(1:19CR0489-1)

Court during the trial because "[e]vidence that an individual acted lawfully on other occasions not charged in the indictment is generally inadmissible in that it does not negate the charge that he acted with criminal intent on another occasion." *United States v. Mack*, 298 F.R.D. 349, 352 (N.D. Ohio 2014) (Lioi, J.) (citations omitted); *see also United States v. Clark*, 377 Fed.Appx. 451, 458 (6th Cir. 2010).  Even if the Court finds that some of this proposed testimony satisfies Rule 404(b), it may still be excluded under Rule 403 because its relevance may be limited and it may be far more prejudicial than probative.

The case of *United States v. Kemp*, 362 F. Supp.2d 591 (E.D. Penn. 2005), illustrates the complications that could arise in the case at bar absent requiring pretrial disclosure of any specific "good acts" evidence or argument by Defendant.  The court ruled that certain evidence (including evidence of "consciousness of innocence" and evidence that certain unspecified improper motives had influenced the government) was inadmissible, rejecting "as an extreme form of 'bootstrapping' the Defendants' argument that[,] because this purported defense was raised in their counsel's opening argument to the jury without an objection by the government being upheld by the Court, it has necessarily been approved." *Id.* at 593.

**VI.**

For the reasons set forth above,

Defendant's Motion *in Limine* to Exclude the Mention of the Term "Candyman" With Reference to Dr. Gary Frantz (ECF No. 133) is denied.

Defendant's Motion *in Limine* to Preclude Evidence or Argument Regarding the Pending Civil and Criminal Litigation of Dr. Gregory J. Gerber and/or Mention of Additional Physicians Subject to Criminal Prosecution or Conviction (ECF No. 134) is granted in part.  To the extent

14

(1:19CR0489-1)

that Defendant opens the door to such evidence by implying that the practices of other

practitioners were highly respected such that referrals by Defendant to these specific practices

alone carry the weight of legitimacy, the Government will be allowed to ask the Court for

permission to present such evidence in rebuttal of such an argument.

Defendant's Motion *in Limine* to Limit the Testimony of Agent Tyler Parkinson and any

Other Non-Expert Witnesses (ECF No. 135) is granted in part.  Special Agent Parkison will be

allowed to testify about why he continued his investigation of Defendant or why certain

investigative techniques were used.

Defendant's Motion *in Limine* to Preclude Evidence or Argument Regarding the Death of

L.T. or, in the Alternative, to Preclude Evidence or Argument That the Medications Prescribed by

Defendant Were the Cause of L.T.'s Death (ECF No. 136) is denied.

The Government's Motion *in Limine* (ECF No. 141) is granted in part.  On or before

August 6, 2021 at Noon, Defendant shall supplement his Notice (ECF No. 142-1).  The

Supplement shall include the actual opinions of Drs. Warfield and Buffington as to the ten

patients identified in the Indictment (ECF No. 1) or individual prescriptions that Defendant wrote

to the patients, and the reasons for their opinions.  The Supplement shall also include a

description of how Dr. Buffington is qualified as an expert in pain management or the treatment

of pain.  Neither witness will be permitted to define or otherwise opine on what the law is or

should be, including testifying about what legal terms mean.  The Court reserves ruling on

Defendant's Exhibit 700, the patient file for a person with the initials D.T.  Finally, in order to

avoid surprise and possible error, the Court requires that Defendant disclose any specific "good

acts" evidence or argument, if any, on or before August 6, 2021 at Noon, in order to provide the

(1:19CR0489-1)

Government an opportunity to object and the Court to rule on the admissibility of any instances of

Dr. Frantz's "good acts."


      IT IS SO ORDERED.


 August 5, 2021                    /s/ Benita Y. Pearson          
Date                            Benita Y. Pearson
                                United States District Judge

16